UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAKE CHARLES DIVISION

**MATHESON TRI-GAS, INC.**            :        **CIVIL ACTION NO. 2:16-cv-1303**

**VERSUS**                            :        **UNASSIGNED DISTRICT JUDGE**

**WILLIAMSON GENERAL
CONTRACTORS, INC.**                   :        **MAGISTRATE JUDGE KAY**

## REPORT AND RECOMMENDATION

Before the court is a Motion for Summary Judgment [doc. 61] filed by plaintiff Matheson Tri-Gas, Inc. ("Matheson") and opposed by defendant Williamson General Contractors, Inc. ("Williamson"). The matter has been referred to the undersigned for review, report, and recommendation in accordance with the provisions of 28 U.S.C. § 636.

### I.
#### BACKGROUND

This action began as a breach of contract suit relating to Matheson's Phase I construction of a new gas plant ("Pelican project") in Westlake, Louisiana. On May 27, 2015, Williamson project manager Joey Quick submitted a bid to provide construction services on the mechanical installation at the plant, for the lump sum price of $15.8 million. Doc. 61, att. 3, pp. 3–7. Matheson accepted Williamson's bid by purchase order issued on May 29, 2015. Doc. 61, att. 4, p. 3. Construction commenced but was complicated by several design drawing revisions from Matheson. Doc. 61, att. 2, p. 2, ¶ 6; doc. 61, att. 3, p. 1, ¶ 6. Williamson responded with requests for change orders, which Matheson disputed. Doc. 61, att. 3, p. 1, ¶ 7. The parties entered into a "Change Order Agreement" effective February 2, 2016, under which Matheson agreed to pay

Williamson an additional $3.4 million for costs incurred by certain revisions up to that date. *Id.* at pp. 1–2, ¶¶ 8–11; *see id.* at pp. 8–9 (copy of agreement). The agreement specifically excluded certain costs anticipated to be incurred after its effective date, and further provided that "[a]ny modifications made or issued after Feb. 2, 2016 will be charged at the cost plus rates." *Id.* at 8–9.

On April 21, 2016, Matheson issued a letter of intent to award the mechanical portion of the Pelican Phase II project to Williamson. Doc. 61, att. 4, pp. 320–21. On June 30, 2016, Williamson demanded an additional sum of approximately $6.5 million to continue work on the Phase I project. *Id.* at 310–12. By email dated July 4, 2016, Matheson stated that it would need a few days to evaluate the information presented and directed Williamson not to return to the project until advised to do so by Matheson. Doc. 86, att. 2, p. 5, ¶ 24; doc. 86, att. 9. The following day, Matheson advised Williamson that it was terminating the parties' business relationship effective immediately and rescinding the letter of intent relating to Phase II. Doc. 86, att. 10.

Matheson then filed suit in this court, asserting federal diversity jurisdiction. Doc. 1. In the complaint Matheson maintains that it paid Williamson all sums due and owing under their agreements but that Williamson continued to demand "additional unreasonable sums" to complete the facility and then breached the agreements by abandoning the project on or about June 30, 2016. *Id.* at p. 3, ¶¶ 7–8. As a result, Matheson asserts, several of Williamson's subcontractors have filed or threatened to file liens against the facility to recover sums that they allege are owed by Williamson. *Id.* at pp. 3–4, ¶ 9. Accordingly, Matheson seeks damages incurred from Williamson's alleged breaches and subrogation to the rights of any subcontractors it must satisfy based on the above liens. *Id.* at pp. 4–5, ¶¶ 10–16. It has also amended its complaint to add claims of indemnity and bad faith breach of contract. Doc. 20.

Williamson brings counterclaims against Matheson for breach of contract, bad faith breach of contract, detrimental reliance, fraud/fraudulent inducement, cardinal change, open account, unjust enrichment, quantum meruit, and negligence.[1] Docs. 6, 24. Matheson now moves for summary judgment on all counterclaims raised by Williamson, stating that it has honored all binding agreements between the parties and that Williamson has no evidence to support its remaining counterclaims. Doc. 61, att. 1. Williamson opposes the motion. Doc. 84.

## II.
### SUMMARY JUDGMENT STANDARD

A court should grant a motion for summary judgment when the movant shows "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56. The party moving for summary judgment is initially responsible for identifying portions of pleadings and discovery that show the lack of a genuine issue of material fact. *Tubacex, Inc. v. M/V Risan*, 45 F.3d 951, 954 (5th Cir. 1995). The court must deny the motion for summary judgment if the movant fails to meet this burden. *Id.*

If the movant makes this showing, however, the burden then shifts to the non-moving party to "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 106 S.Ct. 2505, 2511 (1986) (quotations omitted). This requires more than mere allegations or denials of the adverse party's pleadings. Instead, the nonmovant must submit "significant probative evidence" in support of his claim. *State Farm Life Ins. Co. v. Gutterman*, 896 F.2d 116, 118 (5th Cir. 1990). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 106 S.Ct. at 2511 (citations omitted).

---

[1] Williamson also sought to raise claims against Matheson's parent company, a Japanese corporation. Doc. 24. After a period of jurisdictional discovery, the court granted the parent company's motion to dismiss all claims against it for lack of personal jurisdiction. Docs. 87, 95.

A court may not make credibility determinations or weigh the evidence in ruling on a motion for summary judgment. *Reeves v. Sanderson Plumbing Prods., Inc.*, 120 S.Ct. 2097, 2110 (2000). The court is also required to view all evidence in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Clift v. Clift*, 210 F.3d 268, 270 (5th Cir. 2000). Under this standard, a genuine issue of material fact exists if a reasonable trier of fact could render a verdict for the nonmoving party. *Brumfield v. Hollins*, 551 F.3d 322, 326 (5th Cir. 2008).

## III.
### APPLICATION

Under *Erie Railroad Co. v. Tompkins*, 58 S.Ct. 817 (1938), a federal court sitting in diversity jurisdiction applies the substantive law of the forum state. *See Cates v. Sears, Roebuck & Co.*, 928 F.2d 679, 687 (5th Cir. 1991). Thus, the court applies Louisiana law to determine whether Williamson's claims should survive this motion for summary judgment.

### A. *Breach of Contract Claims*

Williamson raises three claims of bad faith breach of contract, based on Matheson allegedly doing the following: (1) failing to pay to Williamson "the full amount of the contract price under the Agreement, as modified," (2) mismanaging the Phase I project, resulting in "a grossly unreasonable number of changes and revisions," and (3) unilaterally rescinding the Letter of Intent to award Williamson additional work on Phase II of the project.[2] Doc. 24, pp. 4–7. Matheson

---

[2] In its original counterclaim, Matheson raised the first and third claims as bad faith breach of contract and the second as simple breach of contract. *See* doc. 6. In the amended and supplemental counterclaim, it raises all three claims as bad faith breach of contract. Doc. 24, pp. 4–7.

moves for summary judgment on these claims, maintaining that Williamson cannot show an underlying breach on any of them.[3] Doc. 61, att. 1, pp. 14–17.

### 1. *Legal standard*

Under Louisiana law, the essential elements of a breach of contract claim are defined as (1) the obligor's undertaking of an obligation to perform, (2) the obligor's failure to perform the obligation (the breach), and (3) resulting damages to the obligee. *Boudreaux v. Flagstar Bank FSB*, 623 Fed. App'x 235, 237 (5th Cir. 2015) (internal citations omitted). Louisiana law also requires that contracts be performed in good faith. La. Civ. Code art. 1983. Bad faith "means more than mere bad judgment or negligence, it implies the conscious doing of a wrong for dishonest or morally questionable motives." *MKR Servs., LLC v. Dean Hart Const., LLC*, 16 So.3d 562, 566 (La. Ct. App. 2d Cir. 2009). An actor contracts in bad faith when he evinces "an intentional[] and malicious[]" failure to perform. La. Civ. Code art. 1997, cmt. (b). Bad faith in contracting is only actionable, however, when preceded by a finding that the actor breached the contract. *Favrot v. Favrot*, 68 So.3d 1099, 1110 (La. Ct. App. 4th Cir. 2011). "The only differences between a typical breach-of-contract claim and a bad-faith breach-of-contract claim are that the latter alleges a culpable mental state and allows the recovery of all damages from the defendant's failure to perform, rather than merely those that were reasonably foreseeable." *White v. State Farm Mut. Auto. Ins. Co.*, 479 Fed. App'x 556, 561 (5th Cir. 2012).

### 2. *Payment of full contract price*

Matheson asserts that Williamson cannot prevail on this claim because it (Matheson) paid all amounts due under the original contract and Change Order Agreement. Doc. 61, att. 1, p. 15;

---

[3] Matheson only contests these claims by arguing under the first that Williamson cannot show a breach, "much less any breach in bad faith." Doc. 61, att. 1, pp. 13–14. It mounts no substantive argument, however, on Williamson's ability to establish bad faith.

*see* doc. 61, att. 4, pp. 3–7 (financial records). Williamson does not contest that Matheson paid the portion of the $15.8 million due under the original agreement, the $3.4 million expressly agreed to in the Change Order Agreement, and additional sums toward change order requests that Williamson made after the Change Order Agreement.[4] Instead, it argues that "a significant number" of change orders issued after February 2, 2016, remain outstanding. Doc. 86, p. 4. Matheson admits that it regarded Williamson's June 2016 demand for an additional $6.5 million as unreasonable and refused to pay. Doc. 61, att. 4, p. 2, ¶¶ 10–11. Accordingly, the relevant question is whether Matheson breached any obligation under the Change Order Agreement by refusing to pay certain charges by Williamson.

The Change Order Agreement provides that it "is subject to the $3,400,000.00 settlement amount agreed upon by the parties," and that this settlement is to be paid for expenses arising from six revisions listed at Section 1. Doc. 61, att. 3, p. 8. Section 2 then lists six exclusions, namely certain material and labor expenses that might be incurred after February 2, 2016, and states that these will be paid after February 2, 2016. *Id.* at 8–9. The agreement concludes by noting that any further modifications "will be charged at the cost plus rates." *Id.* at 9.

Former Williamson project manager Joey Quick, who signed the Change Order Agreement as Williamson's representative and drafted Sections 1 and 2 of that agreement, states that he understood that "any request for additional payment, based on the matters described in Section 2 of the [agreement], would require proof from Williamson" that the changes were necessary and

---

[4] Williamson also maintains that the Change Order Agreement was not a "settlement" of its disputed change orders issued up to the date of that agreement. Doc. 86, pp. 3–4. Instead, it asserts, nothing in the terms of that agreement prevented Williamson from seeking additional costs that it incurred on the project "up to and including the date of the Agreement." *Id.*

The parties contest whether the original agreement limited Williamson's ability to seek alteration of the original lump sum price. However, Matheson does not contest that its payment obligations were modified under the Change Order Agreement. Outside of either agreement, Williamson has not shown how its disputed change orders could have unilaterally modified the original, lump sum contract. Accordingly, Matheson's obligations under pre-February 2016 revisions are not within the scope of this breach of contract claim.

outside of the scope of the original contract. *Id.* at p. 2, ¶¶ 9, 15. He maintains that Matheson "paid all valid and supported cost-plus changes requested by Williamson" between the Change Order Agreement and Quick's departure from Williamson in May 2016. *Id.* at p. 2, ¶ 16.

The plain terms of the contract provided only that Matheson would be charged for costs incurred by ensuing revisions at a certain rate. Matheson's obligation to pay the charge can be read into these terms, as can a limitation that it is only required to pay "valid and supported" charges. Merely labeling the charge as unreasonable, however, cannot establish that they were. Matheson fails to come forth with competent summary judgment evidence to show that the charges it admittedly did not pay were beyond its obligation under the Change Order Agreement. Instead, this issue presents a genuine issue of fact and should survive summary judgment.

### 3. *Mismanagement of Phase I*

Matheson next moves for summary judgment on Williamson's claim that it breached the contract by mismanaging the project and causing excessive revisions and costs to its contractor. It notes that no provision in the agreements limited Matheson's ability to change the designs for the project. Doc. 61, att. 1, pp. 15–16. It also maintains that it met any contractual obligation to control costs of the project through the cost-plus invoicing process set forth in the Change Order Agreement. *Id.* Williamson does not refute these statements and instead premises its response on detrimental reliance. Doc. 86, pp. 6–7. Accordingly, Matheson has shown that there is no dispute as to Williamson's ability to establish a breach under this claim and it is entitled to judgment as a matter of law.

### 4. *Rescission of Letter of Intent*

The letter of intent is labeled as such and provides that Matheson "assumes no liability in connection with its execution [of the letter]." Doc. 61, att. 4, p. 320. Matheson does confirm its

"intent to award the new plant mechanical install to [Williamson]" and provides that it will not be required to compensate Williamson in the event that it (Matheson) cancels the letter "due to cancellation of the Pelican Project Phase II for any reason." *Id.* The attached "Terms of Supply," however, do not provide any specifics on key terms including the contract amount, terms and conditions of payment, and delivery date. *Id.* at 321. Instead, it provides that these terms will be discussed and decided in contract negotiations. *Id.*

"Agreements in principle or letters of intent referring to subsequent formal agreements to be executed are not binding on the parties, even where the instrument thoroughly details the proposed terms and conditions."[5] *Jena Band of Choctaw Indians v. Tri-Millennium Corp., Inc.*, 2006 WL 335779, at *2 (W.D. La. Feb. 13, 2006) (citing *I.H. Rubenstein & Son, Inc. v. Sperry & Hutchinson Co.*, 222 So.2d 329, 330–31 (La. Ct. App. 1st Cir. 1969)). Here, in addition to leaving key terms open for negotiation, Matheson expressly disclaimed any liability based on execution of the letter of intent. This is sufficient under Louisiana law to show that the letter of intent did not qualify as a contract, and so Williamson cannot state a claim for breach based on the letter.

**B.  *Detrimental Reliance Claims***

Williamson asserts two claims of detrimental reliance against Matheson, arguing that (1) Matheson misrepresented the sufficiency of the original design documents for the project and (2) Williamson reasonably relied on Matheson's representations in the letter of intent by not accepting other work in anticipation of being awarded the work on Phase II. Doc. 24, pp. 7–9, ¶¶ 34–46.

---

[5] In *Dickerson v. Cajun Comms. of Texas, Inc.*, 910 So.2d 477 (La. Ct. App. 2d Cir. 2005), a Louisiana court held that a letter of intent describing an employee's right to severance pay was a binding contract. In that matter, however, the court noted that the terms regarding severance pay were clearly defined and found that the reference to a "formal agreement" to follow within 30 days did not demonstrate "an intent to be bound *only* by a subsequent document." *Id.* at 480 (emphasis in original). Here, as shown above, Matheson clearly indicated its intent not to be bound and the terms of the alleged agreement were too vague to give rise to any enforceable obligation.

Matheson asserts that Williamson cannot prevail on these claims because it cannot show reasonable reliance on either alleged representation. Doc. 61, att. 1, pp. 18–19.

### 1. Legal standard

Detrimental reliance is an equitable doctrine "designed to prevent injustice by barring a party from taking a position contrary to his prior acts, admissions, representations, or silence." *In re Ark-La-Tex Timber Co., Inc.*, 482 F.3d 319, 334 (5th Cir. 2007). The doctrine is disfavored under Louisiana law, and Louisiana jurisprudence requires that such claims "be examined carefully and strictly." *Id.*

The elements of a detrimental reliance claim are laid out in Article 1967 of the Louisiana Civil Code, which provides in relevant part that

> [a] party may be obligated by a promise when he knew or should have known that the promise would induce the other party to rely to on it to his detriment and the other party was reasonable in so relying.

La. Civ. Code art. 1967. Such a claim thus requires (1) a representation, (2) justifiable reliance on the representation, and (3) a change in position, to the plaintiff's detriment, as a result of the reliance. *Drs. Bethea, Moustoukas and Weaver LLC v. St. Paul Guardian Ins. Co.*, 376 F.3d 399, 403 (5th Cir. 2004). Detrimental reliance must be premised on a specific promise; a plaintiff may not recover in reliance on an omission. *Schoonover v. Hallwood Fin. Ltd.*, 590 B.R. 134, 143 (W.D. La. 2018). Furthermore, for reliance to be "justifiable" it must be reasonable. *Id.* at 143–44. Whether a plaintiff's reliance on a promise was reasonable is generally a fact-bound determination. *Bethea*, 376 F.3d at 403.

### 2. Design documents

Williamson claims that Matheson "affirmatively misrepresented . . . the completion and sufficiency of design documents for the work to be performed on Phase I" and that it reasonably

relied on these representations in submitting its bid by assuming that the documents "were accurate and complete in their entirety and ready for construction." Doc. 24, pp. 7–8, ¶¶ 35–41. Matheson argues that nothing in either the Change Order Agreement or the bid/purchase order forming the original agreement alludes to the completion of design documents, and so Williamson cannot claim justifiable reliance on any such representation. Doc. 61, att. 1, pp. 18–19.

Applying Louisiana law, the Fifth Circuit has on several occasions found that reliance on extra-contractual representations is "unreasonable as a matter of law because the representations were inconsistent with an unambiguous fully-integrated written contract." *Caplan v. Ochsner Clinic, LLC*, 799 F.Supp.2d 648, 651–52 (E.D. La. 2011) (collecting cases). However, those cases all involved fully integrated agreements. *Id.* at 652. The written agreements here contain no express integration or merger clause, or other evidence that the writing should be regarded as fully integrated. The Fifth Circuit has also held that reliance on a representation that is inconsistent the unambiguous terms of the contract may be unreasonable as a matter of law. *Bethea*, 376 F.3d at 405. Matheson, however, argues that the mere absence of any representation in the writings relating to the completeness of the design drawings renders any such unwritten misrepresentation inconsistent. Doc. 61, att. 1, p. 18. This assertion is incorrect, and Joey Quick's indication that he regarded the initial designs as "preliminary"[6] is insufficient to contradict Williamson's assertion of affirmative misrepresentations on the completion of the design documents. Accordingly, this claim should survive summary judgment.

---

[6] Quick, who prepared the bid for Williamson, states only: "Because the initial designs with the bid documents were preliminary, there were several revisions to the design documents during construction." Doc. 61, att. 3, p. 1, ¶ 6. This statement does not reflect when or how Quick came to regard the designs as preliminary, nor does it exclude the possibility that a contrary representation was made to some Williamson representative during the preparation of the bid. Accordingly, it does not contradict Williamson's allegation of an affirmative misrepresentation on this subject.

### 3. *Letter of intent*

As Matheson notes, the Fifth Circuit has held that reliance on a non-binding letter of intent cannot support a claim of detrimental reliance. *Velocity Energy Ltd. LLC v. Chevron USA Inc.*, 204 Fed. App'x 433 (5th Cir. 2006). There the court described the letter, which was labeled as nonbinding and "contemplated that both parties would work toward an eventual binding . . . agreement," as a "classic example of a non-binding agreement." *Id.* at 434. It thus concluded that plaintiff's reliance on that document was "presumptively unreasonable." *Id.* at 435.

Here Williamson maintains that it was justified in relying on the letter of intent because of its "formality" and because it stated that Matheson would only revoke its promise to award the work to Williamson if the Phase II project were canceled. Doc. 86, pp. 6–7. The latter contention is unsupported by the plain language of the letter of intent, which provides only that Matheson will not be required to compensate Williamson in the event that it cancels the letter due to overall cancellation of the project. Doc. 61, att. 4, p. 320. It does **not** exclude the possibility that Matheson might cancel the letter of intent for other reasons, such as Williamson's alleged failure to complete work on Phase I or any other deterioration in the parties' relationship over that project. Furthermore, as explained above, the letter clearly indicated Matheson's intent not to be bound. It also failed to provide key terms, including price, and deferred consideration of same. Accordingly, Williamson's reliance on the letter's power to obligate Matheson was presumptively unreasonable. Summary judgment should be granted as to this claim.

### C. *Unjust Enrichment and Quantum Meruit*

Williamson also brings claims for unjust enrichment and quantum meruit based on its allegedly uncompensated work on Phase I. Doc. 24, pp. 12–14, ¶¶ 65–70. It raises these claim in the alternative to its breach of contract claims from Phase I, above. *Id.* at pp. 12–13, ¶¶ 65, 69.

### 1. Legal standard

Under Louisiana law, a claim for unjust enrichment exists where the plaintiff can show (1) an enrichment, (2) an impoverishment, (3) a connection between the two, (4) absence of justification for the two, and (5) the absence of any other remedy at law. *Pinegrove Elec. Supply Co., Inc. v. Cat Key Const., Inc.*, 88 So.3d 1097, 1100 (La. Ct. App. 5th Cir. 2012). In other words, unjust enrichment is a subsidiary remedy and is "only applicable to fill a gap in the law where no express remedy is provided." *Walters v. MedSouth Record Mgmt., LLC*, 38 So.3d 243, 244 (La. 2010); *Mouton v. State*, 525 So.2d 1136, 1142 (La. Ct. App. 1st Cir. 1988). When a claim is based on a relationship controlled by an enforceable contract, the plaintiff must seek his remedies on the contract and has no claim for unjust enrichment. *Bethea*, supra, 376 F.3d at 408.

Quantum meruit is a similar remedy under Louisiana law, and is also viewed with disfavor. *United Disaster Response, LLC v. Omni Pinnacle, LLC*, 569 F.Supp.2d 646, 649 (E.D. La. 2008); *Fogleman v. Cajun Bag & Supply Co.*, 638 So.2d 706, 708–09 (La. Ct. App. 3d Cir. 1994). This remedy supplies a term to measure damages where a contract is implied from the circumstances but there is no agreement on compensation. *Dumas and Assoc., Inc. v. Lewis Enterprises, Inc.*, 704 So.2d 433, 438 (La. Ct. App. 2d Cir. 1997). Like unjust enrichment, it is subsidiary to a breach of contract claim based on an enforceable contract. *United States ex rel. T&C Dirtworks, Inc. v. L&S-CKY JV*, 2011 WL 1192944, at *5 (E.D. La. Mar. 28, 2011).

### 2. Application

Both the unjust enrichment and quantum meruit claims are based on the original agreement and the Change Order Agreement. The court and the parties agree that these writings formed enforceable contracts and governed the payment terms on the Phase I project. This court has recommended, supra, that Williamson's breach claim relating to payment survive summary

judgment. It has also recommended dismissal of the remaining two breach claims, but only because they rely on nonexistent contract terms and not because these are based on terms within the contract that are unenforceable. "[I]t is not the success or failure of other causes of action, but rather the *existence* of other causes of action, that determine whether unjust enrichment can be applied." *Garber v. Badon & Ranier*, 981 So.2d 92, 100 (La. Ct. App. 3d Cir. 2008) (emphasis in original). Williamson already has a remedy at law for these claims, regardless of their ultimate success or failure. Accordingly, it cannot prevail on a claim for unjust enrichment or quantum meruit and Matheson is entitled to summary judgment on these claims.

### D. Remaining Claims

Williamson does not raise any opposition to Matheson's motion for summary judgment on the remaining claims. As Matheson observes, failure to address claims in a response to a motion for summary judgment constitutes abandonment of the claim. *Venezia v. ConocoPhillips Co.*, 2014 WL 107962, at *13 (E.D. La. Jan. 9, 2014) (citing *Vela v. City of Houston*, 276 F.3d 659, 678–79 (5th Cir. 2001)); *Harris v. Labor Finders Int'l, Inc.*, 2019 WL 407396, at *7 (M.D. La. Jan. 31, 2019). We agree and recommend that the motion for summary judgment be granted as to Williamson's claims for fraud/fraudulent inducement, cardinal change, open account, and negligence.[7]

---

[7] Williamson also failed to brief the quantum meruit claim in its response. Because it is disposed of on the same grounds as the unjust enrichment claim, the court has examined the merits above. Matheson contends that Williamson also failed to brief the bad faith breach of contract claims and that these are therefore abandoned. Doc. 88, p. 3. Williamson only raised his breach claims as ones for bad faith breach of contract in the supplemental and amended counterclaim, though he also raised the second one as simple breach of contract in the original counterclaim. Doc. 24, pp. 4–7, ¶¶ 18–33; doc. 6, p. 9, ¶¶ 35–39. Matheson's motion, however, was premised on Williamson's inability to prove an underlying breach on all three claims. *See* note 3, supra. The fact that Williamson did not raise the bad faith element when responding to these arguments does not show abandonment of any claim.

## IV.
### CONCLUSION

For the foregoing reasons, **IT IS RECOMMENDED** that Matheson's Motion for Summary Judgment be **GRANTED IN PART** and **DENIED IN PART**, as described above. Accordingly, all of Williamson's counterclaims with the exception of those for (1) bad faith breach of contract based on failure to pay amounts owed under the agreements [doc. 24, pp. 3–5, ¶¶ 18–22] and (2) detrimental reliance based on representations about completion of the design documents [*id.* at pp. 7–8, ¶¶ 34–41] should be **DISMISSED WITH PREJUDICE**.

Pursuant to 28 U.S.C. § 636(b)(1)(C) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties have fourteen (14) days from receipt of this Report and Recommendation to file written objections with the Clerk of Court. Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in this Report and Recommendation within fourteen (14) days of receipt shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error. *See Douglass v. United Services Automobile Ass'n*, 79 F.3d 1415, 1429–30 (5th Cir. 1996).

THUS DONE AND SIGNED in Chambers this 27th day of February, 2019.

_____
KATHLEEN KAY
UNITED STATES MAGISTRATE JUDGE