UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAKE CHARLES DIVISION

| | |
|---|---|
| **MATHESON TRI-GAS, INC.** | **CASE NO. 2:16-CV-01303** |
| **VERSUS** | **JUDGE JAMES D. CAIN, JR.** |
| **WILLIAMSON GENERAL CONTRACTORS, INC.** | **MAGISTRATE JUDGE KAY** |

## MEMORANDUM RULING

Before the court are a Motion for Partial Summary Judgment [doc. 105] and a Motion for Summary Judgment [doc. 110] filed by Matheson Tri-Gas, Inc. ("Matheson"). Defendant and counter-plaintiff Williamson General Contractors, Inc. ("Williamson") opposes the Motion for Partial Summary Judgment but not the Motion for Summary Judgment. *See* doc. 108.

### I.
### BACKGROUND

This action began with a contract between Matheson and Williamson for work on Matheson's Phase I construction of a new gas plant ("Pelican project") in Westlake, Louisiana. The court summarized the background as follows in ruling on the previous motion for summary judgment:

> On May 27, 2015, Williamson project manager Joey Quick submitted a bid to provide construction services on the mechanical installation at the plant, for the lump sum price of $ 15.8 million. Matheson accepted Williamson's bid by purchase order issued on May 29, 2015. Construction commenced but was complicated by several design drawing revisions from Matheson. Williamson responded with requests for change orders, which Matheson disputed. The parties entered into a "Change Order Agreement" effective February 2, 2016, under which Matheson agreed to pay Williamson

an additional $ 3.4 million for costs incurred by certain revisions up to that date. The agreement specifically excluded certain costs anticipated to be incurred after its effective date, and further provided that "[a]ny modifications made or issued after Feb. 2, 2016 will be charged at the cost plus rates."

On April 21, 2016, Matheson issued a letter of intent to award the mechanical portion of the Pelican Phase II project to Williamson. On June 30, 2016, Williamson demanded an additional sum of approximately $ 6.5 million to continue work on the Phase I project. By email dated July 4, 2016, Matheson stated that it would need a few days to evaluate the information presented and directed Williamson not to return to the project until advised to do so by Matheson. The following day, Matheson advised Williamson that it was terminating the parties' business relationship effective immediately and rescinding the letter of intent relating to Phase II.

Matheson then filed suit in this court, asserting federal diversity jurisdiction. In the complaint Matheson maintains that it paid Williamson all sums due and owing under their agreements but that Williamson continued to demand "additional unreasonable sums" to complete the facility and then breached the agreements by abandoning the project on or about June 30, 2016. As a result, Matheson asserts, several of Williamson's subcontractors have filed or threatened to file liens against the facility to recover sums that they allege are owed by Williamson. Accordingly, Matheson seeks damages incurred from Williamson's alleged breaches and subrogation to the rights of any subcontractors it must satisfy based on the above liens. It has also amended its complaint to add claims of indemnity and bad faith breach of contract.

*Matheson Tri-Gas, Inc. v. Williamson Gen. Contractors, Inc.*, 2019 WL 1562247, at *1 (W.D. La. Feb. 28, 2019), report and recommendation adopted, 2019 WL 1561369 (W.D. La. Apr. 10, 2019) (citations omitted). Williamson also asserted numerous counterclaims against Matheson. Docs. 6, 24. Matheson moved for summary judgment on all counterclaims and the court granted the motion, except as to the claims for (1) bad faith breach of contract based on failure to pay amounts owed under the agreements and (2) detrimental reliance based on representations about the completion of the design drawings. *Matheson*, 2019 WL 1562247, at *7.

Matheson now moves for partial summary judgment on its claims against Williamson, asserting that it is entitled to judgment as a matter of law on its claim for indemnity under the Louisiana Private Works Act ("LPWA"), La. Rev. Stat. § 9:4801 *et seq*. Doc. 105. Williamson opposes the motion. Doc. 108. Matheson also moves for summary judgment on Williamson's two remaining counterclaims. Doc. 110. Williams has not filed any opposition to this motion and its time for doing so has passed. Accordingly, the motion is regarded as unopposed.

## II.
## SUMMARY JUDGMENT STANDARDS

A court should grant a motion for summary judgment when the movant shows "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56. The party moving for summary judgment is initially responsible for identifying portions of pleadings and discovery that show the lack of a genuine issue of material fact. *Tubacex, Inc. v. M/V Risan*, 45 F.3d 951, 954 (5th Cir. 1995). The court must deny the motion for summary judgment if the movant fails to meet this burden. *Id.*

If the movant makes this showing, however, the burden then shifts to the non-moving party to "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (quotations omitted). This requires more than mere allegations or denials of the adverse party's pleadings. Instead, the nonmovant must submit "significant probative evidence" in support of his claim. *State Farm Life Ins. Co. v. Gutterman*, 896 F.2d 116, 118 (5th Cir. 1990). "If the evidence is

merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249 (citations omitted).

A court may not make credibility determinations or weigh the evidence in ruling on a motion for summary judgment. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000). The court is also required to view all evidence in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Clift v. Clift*, 210 F.3d 268, 270 (5th Cir. 2000). Under this standard, a genuine issue of material fact exists if a reasonable trier of fact could render a verdict for the nonmoving party. *Brumfield v. Hollins*, 551 F.3d 322, 326 (5th Cir. 2008). When the motion is unopposed, the moving party retains its burden of showing that there is no genuine issue of material fact. *Hetzel v. Bethlehem Steel Corp.*, 50 F.3d 360, 362 (5th Cir. 1995). Under the court's local rules, however, failure to file an opposition means that the moving party's statement of uncontested material facts is deemed admitted. Local Rule 56.2.

### III.
### LAW & APPLICATION

#### A. *Indemnity Claim*

Matheson's indemnity claim arises from its payment of $450,000 to subcontractor Deep South Crane & Rigging, LLC ("Deep South"), in satisfaction of amounts owed by Williamson for work Deep South did on the Pelican project. Williamson accepted a bid from Deep South for its work on the project in July 2015, in exchange for $1,164,780.00. Doc. 105, att. 4, pp. 36–41. On June 24, 2016, Deep South advised Williamson that it still owed approximately $614,000 on those invoices. *Id.* at 42.

Deep South filed a Statement of Lien and Privilege in the Calcasieu Parish Mortgage Records on July 22, 2016. Doc. 105, att. 3, pp. 3–15; *see id.* at p. 1, ¶ 5. It then filed a Petition for Monetary Judgment and Recognition and Enforcement of Lien against Matheson and Williamson, seeking recognition and enforcement of the lien on Matheson's property. *Id.* at pp. 16–27. On May 3, 2018, Matheson signed a settlement and release agreement with Williamson, in which it agreed to pay Deep South $450,000 for cancellation of the lien and dismissal of all claims against it. *Id.* at pp. 28–33; *see id.* at pp. 34–37 (release of lien).

Matheson asserts that Williamson owed Deep South the unpaid amounts, and that it (Matheson) is therefore entitled to judgment as a matter of law on its indemnity claim. Williamson opposes the motion, arguing that (1) Matheson cannot claim indemnity because it wrongfully withheld payment from Williamson and (2) the court should defer consideration of the issue until trial, in order to consider Matheson's alleged wrongdoing and because piecemeal rulings are disfavored.[1] Doc. 108.

"Indemnity in its most basic sense means reimbursement, and may lie when one party discharges a liability which another rightfully should have assumed." *Nassif v. Sunrise Homes, Inc.*, 739 So.2d 183, 185 (La. 1999). Under the indemnity provisions of the LPWA, the contractor "shall indemnify the owner for claims against the owner arising from the work to be performed under the contract." La. Rev. Stat. § 9:4802. Matheson relies on a recent Louisiana appellate court decision holding that the LPWA does not

---

[1] Williamson also asserts, in the alternative, that if the court should grant the motion for partial summary judgment, it should not certify the order as final under Rule 54(b). Doc. 108, pp. 17–19. Matheson has not sought this relief and so there is no need to consider the issue.

require the owner to prove it made duplicative payments or that "it bears no distinct liability to the contractor" before invoking its right to indemnification. *Wholesale Elec. Supply Co. v. Honeywell Int'l, Inc.*, 221 So.3d 98, 104 (La. Ct. App. 1st Cir. 2017), *writ denied*, 227 So.3d 834 (La. 2017). Instead, the court determined, the plain language of the statute "imposes a clear requirement upon a contractor to indemnify an owner for any claims against the owner arising out of work to be performed under the contract . . . ." *Id.* Accordingly, the court upheld a grant of partial summary judgment on the owner's indemnity claim while acknowledging that allegations of the owner's liability for the non-payment remained unresolved.

This court need not decide whether to follow *Honeywell*'s example.[2] Williamson has had the opportunity to show Matheson's tortious or contractual liability through its counterclaims on Matheson's first motion for summary judgment or the one considered below, and has failed to do so. Williamson also offers nothing to substantiate these claims in his opposition to this motion, other than its unsupported assertions that Matheson wrongfully withheld payment under the Change Order Agreement.[3] Accordingly, he has

---

[2] Williamson points to *Carr Stone, Inc. v. Shad*, 2018 WL 6716971 (La. Ct. App. 1st Cir. Dec. 21, 2018), a later but unpublished decision from the same court, for the proposition that the owner's wrongdoing may offset a claim for indemnity under LPWA. In that matter, the indemnity issue was addressed after the owner and contractor's respective fault was determined by a trial on the merits. Matheson asserts that the case is distinguishable on several bases, including the evidence that the owner in that matter had been paying the subcontractor directly for materials. *See id.* at *1. Here, as it notes, Williamson was the only one contractually obligated to pay Deep South under the subcontract.

[3] Williamson attaches evidence already considered under the previous motion, such as its final demand for payment to Matheson. It also offers an affidavit from its president, admitting to many of the facts set forth in Matheson's motion but disputing Matheson's characterization that the company abandoned the project and cursorily asserting that Matheson still owes Williamson $1.7 million for its work on the project. *See* doc. 108, att. 1. Williamson fails to show, however, that Matheson wrongfully withheld any specific payment under the Change Order Agreement and likewise fails to oppose Matheson's motion for summary judgment on that claim below.

not shown that Matheson's liability has any bearing on its right to indemnity or that the court should delay consideration of the motion to resolve this issue.

Williamson does not refute Matheson's showing that it owed a debt to Deep South under the subcontract, or that Matheson paid $450,000 toward the satisfaction of that debt. Matheson has thus shown that it is entitled to indemnification in that amount from Williamson under the LPWA.

### B. *Williamson's Counterclaims*

At issue in Matheson's second motion are Williamson's two remaining counterclaims, for bad faith breach of contract and detrimental reliance. Specifically, Williamson asserts that Matheson is liable for (1) bad faith breach of contract, based on its failure to pay amounts allegedly owed under the Change Order Agreement, and (2) detrimental reliance, for misrepresenting the sufficiency of the original design documents at the time Williamson submitted its bid on the project. Docs. 6, 24. Matheson moves for summary judgment on both claims.

#### *1. Breach of contract claim*

Under Louisiana law, the essential elements of a breach of contract claim are defined as (1) the obligor's undertaking of an obligation to perform, (2) the obligor's failure to perform the obligation (the breach), and (3) resulting damages to the obligee. *Boudreaux v. Flagstar Bank FSB*, 623 Fed. App'x 235, 237 (5th Cir. 2015) (internal citations omitted). Louisiana law also requires that contracts be performed in good faith. La. Civ. Code art. 1983. Bad faith "means more than mere bad judgment or negligence, it implies the conscious doing of a wrong for dishonest or morally questionable motives." *MKR Servs.,*

*LLC v. Dean Hart Const., LLC*, 16 So.3d 562, 566 (La. Ct. App. 2d Cir. 2009). An actor contracts in bad faith when he evinces "an intentional[] and malicious[]" failure to perform. La. Civ. Code art. 1997, cmt. (b). Bad faith in contracting is only actionable, however, when preceded by a finding that the actor breached the contract. *Favrot v. Favrot*, 68 So.3d 1099, 1110 (La. Ct. App. 4th Cir. 2011). "The only differences between a typical breach-of-contract claim and a bad-faith breach-of-contract claim are that the latter alleges a culpable mental state and allows the recovery of all damages from the defendant's failure to perform, rather than merely those that were reasonably foreseeable." *White v. State Farm Mut. Auto. Ins. Co.*, 479 Fed. App'x 556, 561 (5th Cir. 2012).

Williamson alleged that Matheson breached the Change Order Agreement in bad faith by failing to pay invoices submitted under that agreement, which provided that certain expenses were not covered by the $3.4 million paid by Matheson at that time and that future modifications would be charged at a cost-plus rate. Doc. 61, att. 3, pp. 8–9. In its prior motion for summary judgment Matheson asserted that it had paid all "valid and supported" charges under the Change Order Agreement but admitted that it regarded Williamson's final, $6.5 million demand as unreasonable and had not paid it. *See* doc. 96, pp. 5–7. The court denied summary judgment, finding that Matheson had failed to carry its burden of showing that no genuine issue of fact existed on its obligation to pay. *Id.* Williamson also provided an affidavit from its president, alleging that Matheson owed the following invoices under the Change Order Agreement and that they remained unpaid:

| Invoice | Amount | Invoice | Amount |
|---|---|---|---|
| 16J010 | $114,084.29 | 16J022 | $5,890.70 |
| 16J026 | $2,852.42 | 16J032 | $2,451.12 |
| 16J036 | $1,933.56 | 16J051 | $966.23 |
| 16J053 | $10,000.00 | 16J060 | $12,173.10 |
| 16J063 | $8,533.80 | 16J072 | $450,000.00 |
| 16J086 | $96,526.01 | 16J087 | $4,525.02 |
| 16J089 | $9,367.00 | 16J090 | $537,693.75 |
| 16J091 | $36,969.00 | 16J092 | $1,500.00 |
| 16J093 | $15,421.00 | 16J094 | $2,200.00 |
| 16J095 | $2,695.00 | 16J100 | $2,695.00 |
| 16J101 | $1,185.00 | 16J102 | $14,918.29 |
| 16J103 | $1,164.46 | 16J104 | $790.00 |
| 16J105 | $23,389.50 | 16J106 | $18,428.30 |
| 16J107 | $1,268.50 | 16J108 | $31,919.50 |
| 16J109 | $8,993.50 | 16J110 | $1,364.30 |
| 16J111 | $808.50 | 16J112 | $2,653.94 |
| 16J113 | $460.00 | 16J114 | $2,576.50 |
| 16J115 | $1,203.50 | 16J116 | $13,949.00 |
| | | **Subtotal** | **$1,443,549.79** |

Doc. 86, att. 2, ¶ 14. Williamson also identifies Payment Application # 12, in the amount of $309,480.25, as an unpaid charge. *Id.* Accordingly, it asserts that Matheson still owes a total of $1,753,030.04 under the Change Order Agreement. *Id.*; *see* doc. 108, att. 1, ¶ 25.

In its second Motion for Summary Judgment, Matheson again asserts that it paid all valid and supported charges. This time it supports the assertion with an affidavit from Stephen Wilson, the employee assigned as project manager for the Pelican project, and attachments from its own records and Williamson's discovery responses. Williamson's failure to oppose the motion means that the court accepts Matheson's statement of uncontested material facts as true. *See* doc. 110, att. 2.

#### a. *Invoices never submitted*

For 26 of the above 36 invoices (16J022, 16J026, 16J032, 16J036, 16J051, 16J087, 16J093, 16J094, 16J095, and 16J100–116), Wilson states that there is no record that they were ever submitted to Matheson for approval and payment. Doc. 11, att. 3, ¶¶ 5–6. As Matheson notes, Williamson's only evidence for these charges is their appearance on an internal company spreadsheet. *See* doc. 61, att. 5, pp. 36–38. Wilson also shows that Invoice 16J089, for the amount of $9,367.00, was simply a quote prepared by Williamson, as reflected in emails between Williamson and Matheson employees. *See* doc. 10, att. 3, pp. 7–8. Wilson states that this quote was never submitted to Matheson for approval and payment. *Id.* at ¶ 8. Finally, Matheson asserts and Williamson fails to counter that Invoices 16J072, 16J090, and 16J091 "are not cost-plus invoices for design revisions or changes after February 2016," and thus fall outside the scope of the Change Order Agreement.[4] Doc. 110, att. 2, ¶ 14; *see* doc. 110, att. 4, pp. 36–38. Matheson's uncontested statements on these issues are deemed admitted, and the court notes that the invoices do appear to relate to construction delays and a "[d]iscount for new welding procedure," none of which are shown to have any relation to design revisions. Accordingly, Matheson has shown Williamson's inability to prove a breach relating to these invoices.

#### b. *Invoice already paid*

Wilson's records show that Invoice 16J086 was for $14,928.00 rather than $96,526.01, and that this invoice was approved by Matheson on June 17, 2016, and paid

---

[4] Matheson also argues that these invoices were never submitted, and that they appear to be "pre-submittal and drafty-style form" instead. Doc. 110, att. 1, p. 13. The court does not discern any other evidence of submission or completion on the other invoices, and so confines it review to the scope allegation above.

on June 20, 2016. Doc. 110, att. 3, ¶ 7; *id.* at pp. 3–6. Williamson has not disputed the corrected amount or Matheson's evidence that it paid same. Matheson has likewise shown that there is no viable breach claim arising from its handling of this invoice.

### c. *Invoice related to Deep South subcontract*

As for Invoice 16J010, Williamson's own documents show that this charge related to the subcontract with Deep South and that the amount submitted was actually for $79,097.62 rather than the $114,084.29 provided in Williamson's affidavit. *See* doc. 110, att. 4, pp. 39–42. Correspondence from that time shows that the parties disputed the amounts that should be included in the invoice, and the invoice was never approved by Matheson. *Id.* Additionally, Matheson asserts, failure to approve and pay this invoice does not show a breach because the work contemplated was not within the scope of the Change Order Agreement. Doc. 110, att. 1, pp. 16–17 (quoting Change Order Agreement, doc. 61, att. 3, p. 8). Williamson does not oppose these statements and has not alleged that the design changes had any impact on Deep South's work. Accordingly, Matheson has shown Williamson's inability to prove a breach under this claim.

### d. *Invoices rejected because of lien release and/or abandonment*

As to Invoices 16J053, 16J060, 16J063, and 16J092, Wilson states that these were submitted but not paid because Williamson never provided a proper lien release to Matheson. Doc. 110, att. 3, ¶¶ 10–11. Matheson admits that the invoices were initially approved but that it withheld payment because of a meeting with Williamson scheduled for the next day, at which time it alleges Williamson abandoned the project. Doc. 110, att. 1, p. 18; *see* doc. 110, att. 3, p. 9 (Matheson correspondence instructing non-payment).

Accordingly, it maintains, non-payment is justified both by the lack of a proper lien release and by Williamson's abandonment of the project.

Though Williamson disputed Matheson's characterization of the events surrounding its abandonment of the project on prior motions, its failure to do so here would allow the version set forth in Matheson's statement of uncontested material facts to control. The court need only look so far as the lien release, however, in order to evaluate the claim. Williamson fails to show here or anywhere else that it complied with all requirements for payment, and Matheson's correspondence reflects that an issue regarding the lien release was noted on Matheson's side for these invoices. Accordingly, Matheson has shown Williamson's inability to prove a breach relating to these invoices.

Finally, Williamson identifies a payment application for $309,480.25 as an unpaid charge. Matheson shows that this charge relates to the original, $15.8 million lump sum contract and that the project was only 85% complete at the time Williamson stopped work on the project. Doc. 110, att. 3, ¶ 13; *see id.* at pp. 21–25. Williamson fails to identify any breach under that contract based on Matheson's failure to pay for work it did not perform.

Matheson has shown Williamson's inability to prevail on a breach claim, let alone one based on bad faith, relating to any of the above invoices/charges. Accordingly, summary judgment must be granted as to this claim.

### 2. *Detrimental reliance*

Matheson asserts that it is entitled to summary judgment on Williamson's counterclaim for detrimental reliance. Detrimental reliance is an equitable doctrine "designed to prevent injustice by barring a party from taking a position contrary to his prior

acts, admissions, representations, or silence." *In re Ark-La-Tex Timber Co., Inc.*, 482 F.3d 319, 334 (5th Cir. 2007). The doctrine is disfavored under Louisiana law, which requires that such claims "be examined carefully and strictly." *Id.* To prevail on such a claim, a plaintiff must show (1) a representation, (2) justifiable reliance on the representation, and (3) a change in position, to the plaintiff's detriment, as a result of the reliance. *Drs. Bethea, Moustoukas and Weaver LLC v. St. Paul Guardian Ins. Co.*, 376 F.3d 399, 403 (5th Cir. 2004). Detrimental reliance must be premised on a specific promise; a plaintiff may not recover in reliance on an omission. *Schoonover v. Hallwood Fin. Ltd.*, 590 B.R. 134, 143 (W.D. La. 2018).

On the prior motion, the court found that an issue of fact on the second element precluded summary judgment for Matheson – specifically, whether Williamson could show that it justifiably relied on any verbal representations outside of the parties' written agreements. Now, however, Matheson moves for summary judgment based on the first element by arguing that Williamson cannot show that any such representation was ever made. Doc. 110, att. 1, pp. 21–24.

In its counterclaim Williamson alleged that "Matheson and/or TNSC affirmatively misrepresented to Williamson the completion and sufficiency of design documents for the work to be performed on Phase I." Doc. 24, ¶ 35. Williamson's president also provided an affidavit stating, in relevant part, that "[a]t no time prior to the issuance of the Purchase Order did Matheson indicate that the designs were preliminary and would be subject to substantial further revision." Doc. 86, att. 2, ¶ 7. Williamson has not produced any evidence of the alleged affirmative misrepresentation. Its affidavit points only to an omission, which

is insufficient to support a claim for detrimental reliance. Matheson therefore shows a right to judgment as a matter of law on this claim as well.

## IV.
### CONCLUSION

For the reasons stated above, the Motion for Partial Summary Judgment [doc. 105] and Motion for Summary Judgment [doc. 110] will be granted. Accordingly, Williamson's remaining counterclaims against Matheson will be dismissed with prejudice and Matheson will be granted judgment as a matter of law, in the amount of $450,000, on its indemnity claim against Williamson relating to payments made to Deep South. Still pending before the court are the other claims raised by Matheson against Williamson in Matheson's First Supplemental and Amended Complaint. *See* doc. 20.

**THUS DONE** in Chambers on this ___30___ day of ___July___, 2019.

_____
**JAMES D. CAIN, JR.**
**UNITED STATES DISTRICT JUDGE**